# EXHIBIT B

TCU

Dean of Students

# TITLE IX PANEL HEARING DELIBERATIVE REPORT

**To:** Jeremy Steidl
Assistant Dean of Students
Dean of Students Office

David Cooper
Associate Dean of Students
Dean of Students Office

**CC:** Dean of Students Office
Office of Institutional Equity

**From:** Justice R. Malcolm Graham, Ret.
Panel Chair

**Date:** February 25, 2025

**Re:** Panel Hearing Deliberative Report
Complainant: [redacted]
Respondent: [redacted]

---

This serves as the Deliberative Report for the Panel Hearing that was held on February 20, 2025. The Deliberative Report contains eight required sections:

(1) **Allegations**
(2) **Procedural Steps**
(3) **Conclusion**
(4) **Remedies**
(5) **Rationale**
(6) **Evidentiary Findings of Fact**
(7) **Excluded Information**
(8) **Appeals Process**

## 1. Allegations

On October 15, 2024, the University's Office of Institutional Equity ("OIE") received a report from TCU student, [redacted] ("Complainant"), regarding a potential violation of TCU Policy 1.008- Prohibited Discrimination, Harassment, Sexual Misconduct and Retaliation (rev. October 18, 2020). Complainant alleged that TCU student, [redacted] ("Respondent"), sexually assaulted her on October 6, 2024, at TCU, [redacted] Hall, in room [redacted]



1 / 12 102%

Specifically, the Complainant alleged that the Respondent engaged in conduct in violation of TCU Policy 1.008 Prohibited Discrimination, Harassment, Sexual Misconduct and Retaliation Policy: Sexual Assault (Non-Consensual Sexual Intercourse). Respondent penetrated Complainant's vagina with his penis, without her consent, while she was asleep in a fetal position facing the door.

II. Relevant Policies

TCU Policy 1.0008 Prohibited Discrimination, Harassment, Sexual Misconduct and Retaliation. Specifically:

Sexual Misconduct: Sexual Assault. Non-Consensual Sexual Intercourse (Section IV.C 3(b)): Non-Consensual Sexual Intercourse: For purposes of this policy, it is the penetration of the vagina or anus, with any body part or object, or oral penetration by a sex organ of another person without consent. This includes: Vaginal or anal penetration by a penis, tongue, finger or object, or oral copulation (mouth to genital contact).

III. A. Consent: For purposes of this policy, consent to sexual activity is actions or words that a reasonable person would understand to communicate voluntary permission among participants to engage in mutually agreed upon sexual activity. Consent cannot be obtained through force, threat of force, coercion, intimidation, or by taking advantage of another person's incapacitation. An individual is incapacitated and cannot give consent if a reasonable person would conclude based on the information available that the individual is not capable of giving consent because the individual is mentally and/or physically helpless, either voluntarily or involuntarily, or the individual is unconscious, asleep, or otherwise unaware that the sexual activity is occurring. A person may not be capable of giving consent as a result of the consumption of alcohol and/or other drugs, or due to a temporary or permanent physical or mental health condition.

2. **Procedural Steps**

Hearing Panel Members
Panelist: Annie Cowden, Director – BNSF Neeley Leadership
Panelist: Dr. Christine Hall- Assistant Professor of Professional Practice
Panelist: Dr. Jay Iorizzo, Director – Campus Recreation

Complainant
[redacted]
Thomas Wolf Esq. – Hearing advisor, privately retained

Respondent
[redacted]

Panel Chair
Justice R. Malcolm Graham, Ret

Staff
Procedural Chair
Jeremy Steidl, Assistant Dean of Students - Procedural Chair
David Cooper, Associate Dean of Students – Procedural Chair

III. Investigative Process

A Corrected Notice of Investigation was provided to the parties on November 11, 2024.

The standard of evidence applied in this matter is the preponderance of evidence standard. Credibility of the parties and witnesses is determined by a totality of the circumstances, including, but not limited to, self-interest and/or bias, conduct, appearance or demeanor while testifying, clearness of the witness's recollection, opportunity to observe and know the matters testified about, plausibility and reasonableness of testimony, notices of falsifying testimony, inconsistent statements or testimony, and contradictory testimony.

The OIE conducted a full and thorough investigation in this matter, in compliance with TCU's Title IX policies and procedures. This procedural summary reflects the investigation which included interviews of Complainant, Respondent, and five student witnesses; a collection of documentary evidence; the issuance of an investigative report; a notice of hearing; and the creation of an investigative file. The Parties had the opportunity to review and comment upon the evidence.

OIE Investigator, Angelica Ramirez, conducted interviews with the parties and witnesses as follows:

- On October 14, 2024, and December 4, 2024, the Complainant was interviewed;
- On November 5, 2024, and November 19, 2024, the Respondent was interviewed;
- On November 19, 2024, Student Witness, [redacted] was interviewed ("Witness 1");
- On November 19, 2024, Student Witness, [redacted] was interviewed ("Witness 2");
- On December 3, 2024, Student Witness, [redacted] was interviewed ("Witness 3");
- On December 4, 2024, non-TCU Student Witness, [redacted] was interviewed ("Witness, 4"); and
- On December 4, 2024, Student Witness, [redacted] was interviewed ("Witness 5").

Allegations and Responses

The Complainant's Allegation: The Complainant alleged that "while [she] was asleep in a fetal position facing the door, [she]woke up to you [Respondent] penetrating [her] vagina with your penis, without [her] consent".

The Respondent's Response: The Respondent denied the Complainant's Allegation and says that the Complainant was awake and consented to his penetration of her vagina.
The Notice of Investigation served as notice that the OIE would be conducting an impartial investigation of the allegation, according to the procedures detailed in the TCU Policy 1.009-Responding to Reports of Prohibited Discrimination, Harassment, Sexual Misconduct, and Retaliation, and would contact her to schedule an appointment to discuss the above allegation as well as any appropriate interim measures.

On December 10, 2025, the Parties were given access to the preliminary investigative report and the exhibits. The Parties were given 10 days to inspect and review the report and the evidence and to respond to the preliminary investigative report. Complainant filed a written response to the preliminary investigative report. Respondent did not file a written response to the report.

Respondent did not submit a response to the preliminary investigative report.

On January 13, 2025, the Final Investigative Report was submitted by Investigator, Angelica Ramirez, to the OIE. The Dean of Students Office then set an initial hearing date and appointed a Title IX Hearing Panel. Notice was provided to the Parties. Thereafter, by agreement of the Parties, the hearing date was changed to February 20, 2025.

On February 3, 2024, the Panel Chair met with Complainant and Attorney Thomas Wolf, her advisor, so as to address any issues regarding the Final Investigative Report and the evidence. At this meeting, Complainant consented to the admission of all exhibits to the Final Investigative Report, including the responses of the Parties. Complainant did not offer a response to the Final Investigative Report. She offered no new evidence.

On February 4, 2024, the Panel Chair met with Respondent and Attorney [redacted] his advisor, so as to address any issues regarding the Final Investigative Report and the evidence. At this meeting, Respondent consented to the admission of all exhibits to the Final Investigative Report, including the responses of the Parties. Respondent did not offer a response to the Final Investigative Report. He offered no new evidence.

On February 20, 2025, a virtual hearing via the videoconferencing service, Zoom, was held. Complainant appeared at the hearing. Attorney, Thomas Wolf, served as her Hearing Advisor. Respondent appeared at the hearing. Attorney [redacted] served as his Hearing Advisor. The Hearing Panel consisted of Dr. Christine Hall, Annie Cowden, and Dr. Jay Iorizzo.

Before the hearing commenced, the Panel Chair inquired if the Parties had any new evidence to offer. They did not. The Hearing Panel reviewed the hearing file, considered the relevant evidence, and heard testimony from Complainant and limited statements from the Respondent.[1] At the conclusion of the hearing, the Hearing Panel made determinations

[1] On February 4, 2025, the Respondent filed a position statement with the Hearing Panel. In the statement, he wrote the following: "While the Title IX investigation was going on, a lawyer representing [redacted] tried to force me to say untruthfully that I had non-consensual sex with her and to agree to an expulsion from TCU. That lawyer told me and my family that if I do not do as the [redacted] family wanted, they would have criminal sexual assault charges filed against me. When I refused to submit to their demands and make a false confession, I learned after the

of credibility and decided, pursuant to TCU's standard of proof, preponderance of the evidence, whether it is more likely than not that the alleged conduct occurred, in violation of the policy.

3. **Conclusion**

**Sexual Assault** - The Respondent penetrated the Complainant's vagina with his penis, without her consent, while she was in lying in bed in her dormitory room, unaware that sexual activity was occurring.

Finding: In Violation. Unanimous decision.

4. **Remedies**

1. Conduct Probation – Effective immediately and continuing through December 31, 2025. Respondent will meet regularly with Associate Dean David Cooper, as per the guidelines of a student on Conduct Probation.
2. Residence Hall Re-Assignment – Effective immediately.
3. In future semesters, Parties will not be permitted to live in the same residence halls. Respondent will work with Associate Dean David Cooper to ensure this measure.
4. Retake education provided to all TCU students on consent. Respondent will work with Associate Dean David Cooper to obtain this training. Deadline to review will be no later than April 3, 2025.
5. Three to four page reflection paper, focusing on the "Importance of Explicit Mutually Agreed Upon Consent", and take-aways from the training. Paper will be turned in to Associate Dean David Cooper, who will review and discuss key take-aways with the Respondent. Deadline for this reflection paper will be no later than April 17, 2025.

5. **Rationale**

The Hearing Panel's decision was based on information deemed relevant and considerable by individuals and information made available during the hearing. The disputed issue presented to the Hearing Panel at the hearing was whether Respondent, on October 6, 2024, sexually assaulted the Complainant by engaging in non-consensual sexual intercourse.

Consent to one form of sexual activity does not constitute consent to other forms of sexual activity. There must always be mutual consent to engage in sexual activity. Consent may be verbal and nonverbal.

---

investigation was closed that they hired [redacted] to persuade the Tarrant County District Attorney's Office to charge me with felony assault charges.

Cont. - I would like nothing more than to continue to cooperate as I did during the Title IX investigation and make a position statement. Unfortunately, in light of the [redacted] family's attempt to cause criminal charges to be filed against me, my attorney told me that to make any further statement would waive any protection I have under the fifth amendment of the United States Constitution against self-incrimination.

Based on the Parties' and witnesses' testimony at the hearing, the Investigative Report, the written statements of the Parties and the exhibits admitted into evidence; the Hearing Panel concluded that the preponderance of the evidence standard had been met to prove allegations of sexual assault; non-consensual sexual intercourse. The Hearing Panel found the evidence sufficient to show that Respondent committed the acts set out in the complaint against him.

The Hearing Panel determined that Complainant's testimony was credible on the issue of whether or not she was conscious and aware that the Respondent was engaging in sexual intercourse with her. On this issue, her answers to questions at the Hearing were specific, detailed, consistent, and largely corroborated by the evidence, as a whole. Prior information provided by the Respondent was also specific and detailed, however, the Respondent exercised his right to refuse to give a substantive statement, as well as answer any questions from the panel or either advisor. While the panel did not hold this lack of in-person statement and questioning against the Respondent in their decision, it did result in possible limitation of the information on his behalf made available to the panel.

In reaching their decision, the Hearing Panel relied on the testimony of Complainant, that she was asleep in the bed of her dormitory room, when Respondent penetrated her vagina with his penis. It is uncontested that the Complainant attended the event at the [redacted] on October 5, 2024, arriving at approximately 11:30 p.m. with several friends. Both the Complainant and the Respondent admit to consuming alcohol on the night in question. Additionally, both the Complainant and the Respondent state that while they were inebriated, they were not intoxicated and were in full control of their faculties. Both admit that they retain all memories of the events of the night from their point of view.

The Complainant met with the Respondent at [redacted] and invited him to hook up with her back at her dorm room, which was one floor below the one he lives on in the same residence hall. The parties hooked up in the Complainant's room until approximately 3:15 a.m. on October 6, 2024.

The Complainant testified, and the Respondent agreed (via submitted evidence), that the Respondent penetrated the Complainant's vagina at approximately 3:15 a.m. on October 6, 2024, after he returned from the bathroom and returned to the Complainant, who was lying in a fetal position in her bed, facing the door. The Respondent climbed over her and assumed a spooning position behind her, and shortly thereafter, penetrated the Complainant's vagina with his penis. Within a few seconds after penetration, the Complainant stiffened, turned over, asked the Respondent what he was doing, and ordered him to leave her room. The Respondent immediately apologized for his actions, informing her that he believed that she was awake and responding to his sexual advance, just prior to penetration. He reiterated those statements to her the following evening, stating that he sincerely believed that she had consented to his sexual action.

After the Complainant ordered the Respondent to leave her dorm room, she promptly reported the incident to several of her closest friends, contacted the TCU sexual assault hotline, and eventually reported the matter to TCU OIE.

Respondent's version (via submitted evidence) of the incident is, essentially, that on the night of the incident, Complainant invited him to hook up with him in her dormitory room, after a social event sponsored by his fraternity brothers at a neighborhood bar called [redacted] The Respondent stated that upon entering the Complainant's room, the Complainant and he started to hook up for approximately thirty minutes, which consisted of consensual kissing, groping, and sexual touching, until the Complainant had to go to the bathroom. It is undisputed that neither party asked for or gave verbal consent to the sexual touching, rather the consent was nonverbal, and signaled by the continued mutually enthusiastic physical engagement of each party. The parties "made out" for a significant amount of time.

The Respondent stated that the Complainant returned from the bathroom, got back into bed with him, and they continued to hook up upon her return to the room. Respondent later went to the bathroom, returned and got back in the bed with the Complainant in a spooning position. After about a minute, they rubbed against each other, she arched her hips into his body, and he penetrated her vagina with his penis. However, seconds after penetration, the Complainant's body stiffened, and he asked her what was wrong and if she was okay. The Respondent stated that the Complainant said, "I'm ok, just leave!" The Respondent reported that he put his clothes on and left the room when she told him to leave, as it was apparent that the Complainant was upset.

6. **<u>Evidentiary Findings of Fact</u>**

The Parties are undergraduate TCU students, in their first year, and both live at [redacted] Hall, a TCU residence hall. The Complainant and the Respondent met on September 27, 2024, when they were matched by mutual friends within her sorority, [redacted] and his fraternity, [redacted] to attend a formal dance together, as they did not have dates with other people. In an interview with Investigator Ramirez, [redacted] the Complainant's roommate, referred to as Witness 2, confirmed that she knew of Respondent through mutual friends. She stated that the Complainant expressed that she was interested in the Respondent and found him to be "really cute". Witness 2 stated the Complainant inquired what she knew of the Respondent, and she encouraged the Complainant to pursue Respondent because he was a "great kid". She said that the Complainant and Respondent had been expressing their interest in each other.

The next encounter between the Complainant and the Respondent was on Saturday, October 5, 2024, at a venue called [redacted] that [redacted] hosted at a local venue. This encounter was not planned. At [redacted] the Complainant and Respondent began talking to each other late in the night. It is undisputed that the Complainant had three shots of a beverage containing two ounces each of Vodka, and the Respondent had four 12 ounce bottles of beer.

The Complainant ordered an Uber on Sunday, October 6, 2024 at 1:57 a.m. to return to [redacted] Hall from [redacted] and invited the Respondent back to her room. The Respondent accepted the Complainant's invitation to her room, canceled the Uber he had ordered, and

accepted an Uber rideshare back to [redacted] Hall. The parties arrived at [redacted] Hall at approximately 2:07 a.m. The Complainant was wearing a white slip-on dress with straps, and the Respondent wore shorts, a collared shirt, socks, and slip-on shoes.

Upon entering the Complainant's room, the parties sat, then laid on the Complainant's twin-size bed. The Complainant's roommate was away, attending a wedding in [redacted] The Parties hooked up for about thirty minutes, or until about 2:40 a.m., when they halted the activity because the Complainant needed to go to the bathroom, which was approximately [redacted] feet from her room. The sexual activity consisted of kissing, groping, and Respondent touching Complainant's breasts and buttocks/pubic area. In addition, the Parties continued their hooking up activity when she returned from the bathroom, approximately five minutes after she left the room.

Neither party sought nor obtained verbal consent for their sexual activity. Each party believed that they had received nonverbal consent because they received nonverbal cues, such as enthusiastic reciprocal kissing and touching.[2] Shortly after the Complainant returned to the room, the Parties halted hooking up again because this time Respondent needed to go to the bathroom.

The Respondent got up from the bed and told the Complainant, "Don't fall asleep until I get back, don't fall asleep." The Respondent denies making that statement. The Respondent left the room, urinated, then returned to the Complainant's room within a few minutes. The Respondent says that when he opened the door to the Complainant's room, he saw her eye was open. It is undisputed that the Respondent crawled over the Complainant to get into the bed with her and lie beside her, resuming his spooning position. The Complainant was facing the door.

It is undisputed that the Respondent penetrated the Complainant's vagina while she laid on the bed facing the door in a fetal position, and the Respondent laid behind her. It is also undisputed that the Respondent was not wearing a condom during his penetration of the Complainant's vagina. The Respondent asserted that the Complainant gave him nonverbal cues of her assent to his action by her body language, spooning, rubbing and arching her hips into his body. The Complainant denied being naked and claimed that the Respondent either pushed down or pulled her underwear to the side to penetrate her. The Respondent said the Complainant was nude when he penetrated her with his penis.

The Complainant stated that she was awakened by the Respondent penetrating her vagina from behind. She responded almost immediately and asked the Respondent, "What are you doing? Get out." The Respondent informed the Complainant that he thought she gave nonverbal consent to his penetration. He quickly put on his clothes and immediately left the room.

---

[2] There was no evidence presented that the Complainant touched the Respondent in his private parts. Rather, the Complainant touched the Respondent's arms, shoulders, and chest.

Later, on Sunday, October 6, 2024, the Complainant contacted the Respondent and told him to pick up his socks that he left in her room. The Complainant left the Respondent's socks outside of her room's door, and the Respondent picked them up.

In the evening of October 6, 2024, the Complainant had her roommate, Witness 2, contact the Respondent and ask him to come to their room to talk. The Respondent agreed to meet with the Complainant in her room, and during the meeting they discussed what transpired between them earlier while they were hooking up. Meanwhile, the Complainant conducted some quick research and determined that it would not be illegal in Texas for her to make a secret recording of her conversation with the Respondent. The Complainant later secretly recorded her conversation with the Respondent that evening when he accepted the invitation to go to the Complainant's room to discuss the incident.

Witness 2 confirmed that the Respondent came down to their room to discuss the matter. She stated that she did not believe the Respondent had any indication that he was going to be accused of rape. Witness 2 stated that the Complainant wanted the Respondent to admit to raping her while she was asleep. The Respondent was shaken and said it was not his intention, and reiterated that he assumed and thought the Complainant was engaging because she had backed into him and said that both his and the Complainant's clothes were off. The conversation ended when the Complainant told the Respondent that she did not have anything more to say to him, and he got up and left their room.

The Parties did not report any further issues or encounters with each other since OIE received the complaint.

## 7. Excluded Information

No evidence was excluded.

## 8. Appeals Process

***TCU Code of Student Conduct 2023-24:***

**5.11** *Appeals*

5.11.1 A Respondent found in violation of a section of the Code by either a Student Conduct Administrator, PCB, or formal Conduct Panel may appeal the informal Conduct Discussion or PCB or formal Conduct Panel hearing decision. Either a Complainant or Respondent may appeal a determination of responsibility made by a Title IX Conduct Panel. An appeal, except appeals of alcohol violations, must be made in writing and state the decision and/or outcome they are appealing; the grounds for the appeal, as outlined in section 5.11.2; and the appealing party's reasoning for seeking the appeal on the grounds outlined. The written appeal must be received by the Dean of Students within three (3) days of the date of the letter notifying the student of the outcome of their Conduct Discussion or hearing. All effort will be made for appeals to be decided within thirty (30) days of receipt of the appeal with the exception

of the winter break, summer term, and University closure(s). Written notice of an appeal determination will be provided to: 1) the Respondent for informal Conduct Discussions or PCB or formal Conduct Panel hearing appeals and 2) to both the Complainant and Respondent and OIE simultaneously for Title IX Conduct Panel hearing appeals, within seven (7) days following the determination, as appropriate, by the appellate officer, PCB, or formal Conduct Panel, as follows:

a. Appeals of initial determinations made by a Student Conduct Administrator or a University Conduct Officer will be heard by the PCB or formal Conduct Panel, as appropriate. The PCB may only hear appeals of alleged alcohol and University Facility Standards violations, as outlined in section 1.23. No PCB shall review appeals for restitution, as described in 5.8.5; appeals for restitution outcomes will be reviewed by the assigned Student Conduct Administrator or their designee. Under exigent circumstances, the assigned Student Conduct Administrator or their designee shall retain discretion to complete the appeal without utilizing the PCB.
b. Appeals of initial determinations made by the PCB will be heard by a University Conduct Officer or their designee. Appeals of initial determinations made by a formal Conduct Panel or a Title IX Conduct Panel will be heard by the Vice Chancellor for Student Affairs, Associate Vice Chancellor for Student Affairs, or their designee.

Maximum time limits for the appeal process may be extended at the discretion of the appellate officer, PCB, or formal Conduct Panel, or their designee.

*5.11.2* Except as required to explain the existence of new information, an appeal shall be limited to review of the written documentation accessible to the original decision-maker; the informal Conduct Discussion outcome letter, the PCB letter, or the formal or Title IX Conduct Panel deliberation report; and the verbatim audiotape and/or digital recording, as applicable, for one or more of the following purposes:

a. Procedural error or irregularity – to determine whether the original process was conducted in conformity with prescribed measures and all relevant evidence was objectively evaluated giving the Complainant (in Title IX conduct cases) and Respondent a reasonable opportunity to prepare and to present a written response to those allegations. Deviations from designated procedures will not be a basis for sustaining an appeal unless significant prejudice or error resulted;
b. Conflict of interest or bias – to determine whether the original process was conducted impartially and without conflict of interest or bias against complainants and/or respondents or against individual Complainants and/or Respondents in the present case, in light of the allegations and information presented;
c. Unsupported finding – to determine whether the decision reached regarding the Respondent was based on substantial information and was not arbitrary

or capricious; in other words, whether a reasonable decision-maker could have reached the same decision based on the information considered;

d. Disproportionate outcome – to determine whether the outcome imposed was appropriate for the violation(s) of the Code which the Respondent was found to have committed; and/or

e. New information – to consider new information, sufficient to alter a decision or other relevant facts not brought out in the original proceeding, because such information and/or facts were not known to the person appealing at the time of the original proceeding.

The appellate officer, formal Conduct Panel, or their designee, will complete an initial review to determine if the appeal request is timely and meets the limited appeal grounds listed above. For appeals made to the PCB, the assigned Student Conduct Administrator or their designee will determine if the appeal request is timely and meets the limited appeal ground listed above.

*5.11.3* If the appeal fulfills one of the limited appeal grounds listed in 5.11.2, the appellate officer, PCB, or formal Conduct Panel will proceed with a complete, substantive review of all relevant information. For Title IX Conduct Panel hearing appeals, the assigned Student Conduct Administrator will notify the non- appealing party in writing that an appeal has been filed within three (3) days of receiving the written Title IX appeal; both parties to a Title IX appeal will then have five (5) days to submit a written statement in support of, or challenging the hearing determination and/or outcome, to the assigned Student Conduct Administrator, who will share any such statements with the appellate officer and the other party.

*5.11.4* If the appeal is upheld due to:

a. A procedural error or irregularity on the part of the original decision-maker or that new information presented on appeal should be considered, the appellate officer, PCB, formal Conduct Panel, or their designee, will direct the case to the original decision-maker with instructions for reconsideration. If the appellate officer, PCB, or formal Conduct Panel determines that the original decision-maker may have a conflict of interest or bias, a new Student Conduct Administrator, PCB, formal Conduct Panel, or Title IX Conduct Panel, as appropriate, will be assembled to reconsider the matter according to the instructions of the appellate officer, PCB, formal Conduct Panel, or their designee. Full rehearings will only be used in rare circumstances at the discretion of the appellate officer, PCB, formal Conduct Panel, or their designee.

b. For an original finding unsupported by the relevant information or a disproportionate outcome issued for a violation of the Code which the Respondent was found to have committed, the appellate officer, PCB, or formal Conduct Panel may 1) reverse the unsupported finding, 2) modify the outcome or impose a different outcome, or 3) suspend the outcome after

receiving parameters regarding institutional consistency and any other applicable guidelines from a University Conduct Officer, Student Conduct Administrator, or their designee.

If the appeal is not upheld, the matter shall be considered final and the decision of the appellate officer, PCB, or formal Conduct Panel will be binding upon all involved.

*5.11.5* After making an appeal determination, the appellate officer, PCB, formal Conduct Panel, or their designee may meet with the Complainant (in Title IX conduct cases) and/or the Respondent to discuss the decision.

*5.11.6* The appellate officer, PCB, or formal Conduct Panel will not substitute their judgment for that of the original decision-maker. Appeal decisions shall be deferential to the original decision- maker, only upholding the appeal when there is a compelling justification to do so due to clear error or irregularity, a conflict of interest or bias, an unsupported finding, a disproportionate outcome, or relevant new information.

*5.11.7* All initial conduct process determinations made and outcomes imposed by a University Conduct Officer, Student Conduct Administrator, PCB, formal Conduct Panel, or Title IX Conduct Panel will not be implemented during the appeals process. At the discretion of a University Conduct Officer and/or the Vice Chancellor of Student Affairs, outcomes may be implemented pending review only in exigent circumstances.

Should you have any questions regarding any of the information contained in this report, please contact Jeremy Steidl, Assistant Dean, in the Dean of Students Office, at 817-257-7926.

Sincerely,

Justice R. Malcolm Graham, Ret.
Hearing Panel Chair